The following petition for a re-hearing was presented by the
Hon. Henry Clay:
To the Honorable, the Judges of the Court of Appeals.
The petition of the heirs of the Rev. James Madison, humbly shows: That during the present term of this honorable court, a judgment has been rendered affirming a judgment of the Floyd circuit court, in an action of ejectment, wherein your petitioners were plaintiffs, and Owens, Graham and others were defendants: That your petitioners are advised that the principles on which this honorable court has proceeded in affirming the said judgment, are such as to recommend a re-consideration of the cause, and they respectfully solicit a rehearing of it.
The patent gives an external boundary for 2,797 acres, which was well proved to contain the land in *283 dispute. After a precise definition of that boundary, it proceeds to declare, “ Including within the said bounds 522 acres of land entered for John Preston, and 425 acres for William Garrard, and both which claims have been excluded in the calculation of the plat,” &c. In effect, it is a patent for 2,797 acres. The legal title passes from the commonwealth to the grantee for that quantity; but the commonwealth tells him, at the time it grants it, that he is a trustee for Preston and for Garrard, for their respective quantities. Such is believed to be the legal operation of the grant. The words, “ both which claims have been excluded from the calculation of the plat,” merely mean to notify the cause of more land being comprehended in the patent than the party was entitled to, and cannot be understood to imply, as is respectfully believed, a limitation of the quantity granted.
The general principle is admitted, that in an action of ejectment the plaintiff must show himself to possess the legal title, and prove his boundary. That is believed to have been sufficiently done. It was no objection to a recovery by your petitioners, that to a part of the land comprised in their ancestor’s grant, there was an equitable claim in Preston and Garrard. At law, the legal title must prevail; but if the call to exclude them in the calculation of the plat could be taken advantage of by any body, in a trial at law, (which is denied,) it could only be done by Preston and Garrard themselves, or their alienees, for whose benefit it was made. Now, the defendants show no connexion between themselves and Preston and Garrard; they show no title of any description; they are mere squatters, for any thing that appears to the contrary in this record. It would be strange, if any one could take advantage of an exception, but him for whose benefit the exception was made.
Although the plaintiff takes upon himself to prove his own boundary, and is bound by the principles of law to do so, he is not bound to prove more than sufficient to create a strong presumption in his favor. Prima facie evidence is sufficient evidence, until it is repelled. The exhibition of such evidence must devolve on the antagonist the duty of destroying its force. Now, when we show the exterior boundary, and prove it, and prove the defendants to be within it, it is their duty to obvi *284 ate the force of it. They attempt this; hut how? By setting up an exception; and they unreasonably call upon us to prove, not that they are within our general boundary, (for that they cannot deny,) but the negative, which no man is bound to prove, that they are not within the exception. It is believed to be an universal truth, applicable to all subjects, that he who, being apparently within the general rule, claims the benefit of some exception to its operation, must bring himself within that exception. It was, then, incumbent upon the defendants to prove, either, first, that they claim under Preston and Garrard; or, secondly, that they are within their entries. Your petitioners are advised to believe that even then they would merely have established an equity, which would be the ground of a suit in chancery.
Is it not sufficient, that a man shall prove his own claim? Must he also prove his adversary’s? Suppose the patent had, after giving a boundary, called to exclude from its contents an object notoriously out of that boundary; suppose, for example, a patent were to give as its boundary, the limits of the county of Fayette, and then were to add, to exclude therefrom the county of Woodford; would that vitiate or affect the patent? Suppose it were to call to exclude a nonentity; would that vitiate it? Now, the entries of Garrard and Preston, from the proof before the court, are to be taken as nonentities, “ without a habitation or a home.” The court knows nothing to the contrary. It is believed to be the fact. Shall these nonentities impair our grant?
A grant is to be helped by every construction. Such is the general rule. It is not to be invalidated, but from stern necessity.
The consideration that we may get more land than we are entitled to, is not to deprive us of all land. Surplus has been over and over again sanctioned by this court, and also by the supreme court of the United States, in the strongest imaginable case, (Brown and Quarles,) where it was decreed to a complainant in equity.
Take the chances: Here is a patent for about double the quantity which is excluded; in regard to any given acre, then, the odds are just two to one, that that acre is not within Preston or Garrard, if they even have an existence.
H. CLAY, for petitioners.
Shall a patent of the commonwealth, granted to one man, be defeated, because it excludes the claims of two others, in behalf of persons who have no claim? The act was that of the surveyor, to insert the exclusion, which has been done; shall the party be prejudiced by the officer of the government?
This is not the case of an entry, where precise description is necessary; it is the case where identity alone is concerned.
Your petitioners would also respectfully urge, that at the former hearing, their cause, owing to an accident, was not argued by their counsel; that the principle which the court has settled, is of great general consequence, and they humbly hope that the honorable court will allow a re-consideration of it.
But, on the 14th of December 1821, it was overruled.